UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON



Eastern District of Kentucky
FILED

JAN 1 0 2007

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-31-GWU

MARTHA DAVIS,                                               PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.

## INTRODUCTION

The plaintiff originally brought an action to challenge the defendant's denial of her application for Supplemental Security Income (SSI) benefits filed March 22, 2001.    After a period of reconsideration prompted by the undersigned's Memorandum Opinion and Order of March 21, 2005 in Davis v. Barnhart, London Civil Action No. 04-40-GWU (E.D. Ky.) (Tr. 280-291), the case is once again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

1

whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

2

Davis

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading

3

Davis

of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, the Commissioner considered additional medical evidence and obtained more testimony from a vocational expert (VE). The ALJ found that Mrs. Davis had "severe" impairments consisting of fibromyalgia, knee osteoarthritis and chronic sinusitis (Tr. 253), but retained the residual functional capacity to perform "medium" level exertion with no planning of ladders or crawling, occasional stooping, crouching, or kneeling, and no exposure to temperature extremes vibration, dust, fumes, smoke, chemicals, or noxious gases (Tr. 255). In response to a series of hypothetical questions, the VE testified that there were jobs that a person of the plaintiff's age, education, and work experience could perform with these limitations, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 400-1). Therefore, the ALJ found that the plaintiff was not entitled to benefits. (Tr. 257).

4

Davis

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The Court noted in the prior Memorandum Opinion that the ALJ did not have sufficient grounds to reject part of the functional restrictions given by a consultative physical examiner, Dr. Hughes Helm, the only treating or examining source to express an opinion. (Tr. 289-90). On remand, the plaintiff submitted office notes from a treating family physician, Dr. Jack W. Cope, covering the period from March 15, 2004 (Tr. 332) to July 18, 2005 (Tr. 373-4). Notes from two specialists who had seen the plaintiff on referral from Dr. Cope were also included. (Tr. 323, 335, 352-354). Dr. Cope prepared a functional capacity assessment dated September 21, 2005 indicating that Mrs. Davis could lift no more than five pounds two or three times a day, could stand or walk only 30 minutes per day, could sit 30 minutes "before moving," could not balance, crouch, kneel, or crawl, could climb or stoop once a day, and had a limited ability to reach, handle, feel, push/pull, and work around moving machinery, temperature extremes, chemicals, dust, and fumes. (Tr. 363-5).

Clearly, if the treating physician's restrictions were accepted, there would be no jobs the plaintiff could perform.

The ALJ rejected Dr. Cope's opinion, however, on the grounds that it was not supported by his physical examination findings, and was not corroborated by the

5

the plaintiff's testimony regarding her physical activities. (Tr. 253).[1] The ALJ also did not accept the conclusion of a new consultative physical examiner, Dr. Mark Burns, who examined Mrs. Davis on June 17, 2005, and concluded that she had an essentially normal examination and could perform "medium" level exertion with no other restrictions. (Tr. 355-8). The functional capacity finding was more restrictive than either of these sources, but less restrictive than that of Dr. Helm, the previous examiner, who had indicated that the plaintiff could sit six hours with rests, stand six hours with rests, and walk six hours with rests, occasionally lift 10-50 pounds, occasionally carry 10-20 pounds, and could occasionally bend, squat, crawl, climb, and reach above shoulder level. (Tr. 216). The plaintiff argues on appeal that it was error for the ALJ to reject the opinion of the treating physician, and, in the alternative, that it was error not to base her opinion on a particular examiner.

Regarding the issue of the treating physician, the ALJ was correct in indicating that Dr. Cope's notes did not document very many physical abnormalities. Dr. Cope's first note indicated that he had referred his patient to Dr. Mary Ann Domingo, a rheumatologist. (Tr. 332). Dr. Domingo's notes show that the referral was for "complaints of polyarthralgias," particularly joint pain and stiffness when getting up in the morning. (Tr. 335). The plaintiff told the specialist that she was able to walk for less than a mile and climb only four to six steps, but currently was

---

[1]The daily activities included cooking, housework, and attending church twice a week. (Tr. 254, 391, 393, 396).

6

Davis

doing "a lot of household chores." (Id.). Dr. Domingo noted a good range of motion

to the extremities, a "mild" varus deformity of the knees, and multiple tender points.

(Id.). She diagnosed possible fibromyalgia syndrome based on the trigger points.

(Id.) Blood testing showed a mildly positive antinuclear antibody (ANA) test. (Tr.

336). On February 17, 2004 Dr. Domingo described this result as "low titer ANA,"

and continued to diagnose fibromyalgia syndrome and knee osteoarthritis. (Tr.

337). She deferred physical therapy because of insurance reasons, and stated that

she would see the plaintiff back only as needed. (Id.) Dr. Cope noted that Dr.

Domingo had found no real evidence of rheumatoid arthritis or lupus and also noted

the trigger points, but stated that the plaintiff had a full range of motion of the knees,

hands, and elbows and no swelling of the joints. (Tr. 332). Dr. Cope later referred

his patient to  the "Arthritis and Osteoporosis Center," who submitted an unsigned

report dated October 5, 2004 noting no evidence of acute or active synovitis and

only mild to moderate tenderness and limitations in range of motion. (Tr. 352-4).

The medication Mobic was prescribed. (Tr. 354). Later, Dr. Cope described the

findings of this source as being "more consistent" with degenerative joint disease,

and noted that Mobic was "controlling her joints quite well" and she was able to get

around "fairly well" (Tr. 312-13).  On one occasion subsequent to this statement,

however, in April, 2005, Dr. Cope reported that the plaintiff was having difficulty

getting around, due to aching joints, and the examination showed no edema but

was remarkable for tenderness in the knees, elbows, and hands.  (Tr. 306). The

7

most recent office note, dated July 18, 2005, indicates that the plaintiff had been "fairly stable," although she was still having "some muscle aches," and was "doing very well" with her other problems. (Tr. 373). Dr. Cope's essentially disabling restrictions were explicitly based only on "morning stiffness shoulder [and] knees." (Tr. 363). A reasonable fact-finder could have concluded that, taken as a whole, the objective findings listed by Dr. Cope and the specialists did not support this level of limitations.

The ALJ's hypothetical restrictions were not consistent with either of the two remaining examining sources, a fact cited by the plaintiff in requesting a remand. Since Dr. Burns found no restrictions beyond a limitation to medium level lifting, the hypothetical still could be supported by substantial evidence, however, if his opinion were entitled to equal weight with Dr. Helm's 2003 examination, which included greater restrictions. The plaintiff argues that Dr. Helm had more of her medical records available for review, including Exhibit 4F, which included the report of a July 12, 2000 MRI of the cervical spine showing mild to moderate spurring indenting the thecal sac at the C5-C6 level. (Tr. 156). However, Dr. Burns did have Dr. Helm's report available for review, and Dr. Helm included a description of the MRI. (Tr. 209).[2] Dr. Helm had based his restrictions on an overall impression of fibromyalgia,

_____

[2]The plaintiff's own treating physician at the time the MRI was obtained, Dr. Bari, indicated that she had recovered from her "cervical strain" after physical therapy. (Tr. 125).

Davis

although noting that there were few objective findings on examination (Tr. 212), and fibromyalgia was also the diagnosis of the specialist Dr. Domingo, whose report was not reviewed by Dr. Burns. The second specialist to whom Dr. Cope referred the plaintiff did not diagnose fibromyalgia, however, (Tr. 354) and Dr. Cope did not specify fibromyalgia as the reason for the limitations he gave, merely presumably transient "morning" stiffness. In any case, the office notes of Dr. Cope at least arguably indicate much improvement on Mobic. Therefore, although there was evidence which Dr. Burns did not see, the evidence does not clearly establish permanent limitations greater than the ALJ's eventual set of restrictions.

The decision will be affirmed.

This the ___/0___ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE

9